FREDERICK K. FISH

*v.*

A. GOULD HARRISON et al.

[Decided July 10th, 1914.]

Evidence *held* to require a finding that complainant was a stockholder in a certain corporation as distinguished from a holder of the shares thereof as collateral to a loan, and was entitled to maintain a bill against the corporation's treasurer for an accounting.

*Mr. Edward Maxson,* for the complainant.

*Mr. Robert H. McCarter* and *Mr. J. Henry Harrison,* for the defendants.

LEWIS, V. C.

This is a bill asking for an accounting from A. Gould Harrison, treasurer of the Harrison Milling Company, and that fifteen shares of stock now held by him be transferred to the corporation, it being alleged that they were purchased with the funds of the corporation.

The complainant's right to an accounting is resisted, in the first instance, on the ground that he is not a stockholder of the Harrison Milling Company as is alleged in the bill. It is asserted that he merely made a loan to the company of $4,-000 and never purchased forty shares of its stock for this amount but held the stock as collateral security for his loan. The only basis for this claim that I find is the evidence of the complainant himself when undoubtedly he inadvertently speaks of taking the stock "as collateral for my money." No other testimony whatsoever is offered to indicate that the stock was taken as collateral for a loan. The books show no record of a loan made by the complainant, but they do show the issuance of

forty shares of stock to Frederick K. Fish. He exhibits a certificate of stock for these forty shares. The resolution of the board of directors passed June 18th, 1903, directed the sale of the stock to Fish. He was the president of the corporation for many years and a member of the board of directors. He attended the meetings of the corporation and participated in its business affairs. He was not paid interest on his money but was paid a salary of $100 per month and dividends. I am satisfied by the evidence that he is the *bona fide* holder of forty shares of the capital stock of the company.

The bill sets up several alleged overdrafts on the part of the treasurer, Harrison. There is no doubt that at the time when Fish in 1903 acquired his stock Harrison had overdrawn his account to a considerable extent. It is undoubted also that when Fish became such stockholder he was informed of the practice of overdrawing, it being explained to him by Harrison, and some time in 1905 he was informed further by the defendant that he had drawn his salary which up to this time amounted to $20 per week, and, in addition thereto, had overdrawn to the extent of $4,500. It was at this time that the complainant assented to the proposition that the salary be increased to $40 per week, and that the overdrafts be charged off and the defendant be relieved of responsibility for it.

After this complainant appears to have taken a new stand. He says that he assented to no further overdrafts, although the evidence indicates that they continued; for in August, 1906, we find an overdraft of $1,000 above the salary; in August, 1908, an overdraft of $1,500 appears; and in 1909 about $1,000 drawn in excess of salary is shown. These were all overdrafts by the treasurer. The defendant claims that there was a clear understanding between complainant and himself that the practice of overdrawing should continue and it is urged by his counsel that the resolution of 1905 is strong corroborative evidence of the truth of their client's claim. While it appears from the testimony that Fish knew about some of the overdrafts—one at least—it being shown that he, Fish, wrote an entry in the minute book, page 40, immediately after one of these later

resolutions, *i. e.,* later than the resolution of 1905. He denies seeing the resolution, and says that he had no knowledge of these acts of Harrison and that he never assented to the situation.

In March, 1910, Fish complained of the management of the corporation and called a meeting. He alleges that he asked for an audit of the books, which was refused by the defendant. It is apparent that at this meeting the question of the over-drafts subsequent to 1905 and the general financial affairs of the corporation were a matter of serious controversy. After this meeting Fish brought his action in this court. It is urged that Fish, as president of the corporation and the holder of forty shares of stock, could have asserted his position some time before, while he was in close touch with the affairs of the company, and thus have avoided lengthy litigation, still on the demurrer to the bill filed by the defendant the court has said that the complainant has not been guilty of laches. A. Gould Harrison was in actual charge of the business, and the complainant claims to be in the dark as to the condition of its affairs. The books were kept in such manner as would necessarily make it difficult to ascertain the exact financial condition of the company without careful examination. The accounts are not intricate, but they are entangled. They, however, can be analyzed and explained. In such a case equity has jurisdiction, if the complainant's right to apply is established. Charges have been made that Harrison has been guilty of improper conduct in the management of the affairs of the corporation. He may be entirely innocent of these charges, but an accounting alone can establish that fact. I am satisfied that in this case the complainant is entitled to the relief he seeks. In what manner and by whom the account shall be stated, I shall determine at the time the application is made to me to settle the decree.

As to the second question involved in this controversy, I am not satisfied that the Beyea stock was purchased with the funds of the corporation, and I shall not dispose of this issue until the account has been taken. Some further evidences of this transaction which may throw light upon it may develop upon the accounting. I feel satisfied that the brother of the defendant has

told the truth about his part in the transaction. The money received from the purchase the defendant claims to have loaned to the company. The expert employed by the complainant fails to find an entry on the books showing the loan by Harrison, while he admits that the books do disclose that the company received $1,800 from some source or other. The defendant claims that he applied the money thus loaned to his purchase of the Beyea stock. However, I deem it advisable, under the circumstances, to retain the disposition of this question until an accounting has been had.

A decree will be advised in accordance with the views herein expressed.